UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 17-11681-GAO

MERRILL LYNCH, PIERCE, FENNER & SMITH, INC.,
Interpleader Plaintiff,

v.

KATHERINE FLANDERS-BORDEN, WILLIAM J. SHERRY, DAVID E. FLANDERS,
KARYN S. BEEDY, and BRETT L. PETERSON,
Interpleader Defendants,


WILLIAM J. SHERRY, DAVID E. FLANDERS, KARYN S. BEEDY, and BRETT L.
PETERSON,
Crossclaim Plaintiffs,

v.

KATHERINE FLANDERS-BORDEN,
Crossclaim Defendant.


OPINION AND ORDER
July 1, 2020

O'TOOLE, S.D.J.

 This is an interpleader action brought under 28 U.S.C. § 1335 to determine the proper

ownership, transfer, and/or distribution of assets of an account established by Alton "Roy" L.

Flanders ("Roy") and held by Merrill Lynch, Pierce, Fenner & Smith. After their first motion for

summary judgment was denied by the Court (dkt. no. 73), the crossclaim plaintiffs, William J.

Sherry, David E. Flanders ("Flanders"), Karyn S. Beedy, and Brett L. Peterson, filed a second

motion for summary judgment (dkt. no. 76) on Count I(ii) of the Interpleader Complaint. No timely response by the crossclaim defendant, Katherine Flanders-Borden ("Borden"), has been filed.[1]

Count I(ii) of the Interpleader Complaint requests the Court to "require[e] the Interpleader Defendants to interplead and settle among themselves their rights to [the cash management account held by Merrill Lynch], or upon their failure to do so, enter[] judgment settling and adjusting the claims and determining to whom the funds in the Account should be transferred and/or distributed." (Merrill Lynch, Pierce, Fenner & Smith Incorporated's Compl. in Interpleader 12 (dkt. no. 1).) Each of the crossclaim plaintiffs is named as a beneficiary designee in a Transfer on Death Agreement ("TOD Agreement") applicable to the Merrill Lynch account. They each claim an interest in the account, but have failed to settle among themselves their rights to it. While the crossclaim plaintiffs consent to the distribution of the account in accordance with the TOD Agreement,[2] Borden claims she should receive the entire amount in the account, arguing that the TOD Agreement is invalid and unenforceable because Roy lacked the requisite capacity when he signed it.

Under Massachusetts law, a "contract is voidable by a person who, due to mental illness or defect, lacked the capacity to contract at the time of entering into the agreement." Sparrow v. Demonico, 960 N.E.2d 296, 301 (Mass. 2012). A contract may be voidable due to incapacity where a party to the contract is either "incapable of understanding and deciding upon the terms of the contract," id. (quoting Wright v. Wright, 29 N.E. 380, 381 (Mass. 1885)), or where "by reason of mental illness or defect, [the person] is unable to act in a reasonable manner in relation to the

---

[1] The crossclaim plaintiffs have also filed a motion to dismiss their crossclaim (dkt. no. 87). That motion is GRANTED.

[2] The TOD Agreement provides the following distribution: 20% to Katherine Flanders-Borden, 40% to William Sherry, 20% to David Flanders, 10% to Karyn Beedy, and 10% to Brett Peterson.

transaction and the other party has reason to know of his condition." Id. at 302 (quoting Krasner v. Berk, 319 N.E.2d 897, 900 (Mass. 1974)). The burden of showing an incapacity to contract is on the party seeking to void the contract, and "[m]edical evidence is necessary to establish that a person lacked the capacity to contract." Id. at 304.

On this summary judgment record, no reasonable factfinder could find that at the time of the contract, Roy was incapable of understanding and deciding upon its terms or was unable to act in a reasonable manner in relation to the transaction and that Merrill Lynch had reason to know of the condition. First, the undisputed facts show that the distributions specified in the TOD Agreement were consistent with Roy's wishes as he had stated them to multiple individuals, including independent counsel who have no interest in the fund in question. Prior to signing the TOD Agreement, Roy had expressed a desire that Borden—with whom he had a strained relationship—should not receive the entirety of his multi-million-dollar estate and that he would like to provide a benefit from the fund for several of his friends. He told his close friends Beedy and Peterson that he did not want to leave his full estate to Kate. He also informed David Flanders, his brother, that he did not want his daughter to get "anything" and instead planned to use a TOD vehicle to be able to leave part of his estate to his closest friends. It was also a sentiment he expressed multiple times to his friend and personal attorney of over twenty years, Richard Glidden, who is not a beneficiary under the TOD Agreement. He told Glidden that he "[didn't] want Kate to get everything," and the he wanted to "provide something" for brother and friends Sherry, Beedy, and Peterson. (Aff. of Richard J. Glidden, Esq. ¶ 6 (dkt. no. 78-2).)

Roy spent years working with Glidden's daughter and law partner, Jessie McCann Brescher, to craft an estate plan that did not bequeath his entire estate to his daughter, and instead provided for Sherry, Beedy, Peterson, and Flanders. In February 2016, he met with Brescher and

Glidden to discuss setting up a TOD account while he made decisions about the balance of his estate. At that meeting, he reiterated his desire to leave a portion of his estate to the above-named beneficiaries. Roy later obtained a blank TOD certificate, gathered the information necessary to complete it, including obtaining the mailing addresses and social security numbers for the five people he wanted to name as beneficiaries, and provided the information to Brescher to complete. Brescher completed the form according to Roy's specified requests.

On March 22, 2016, Brescher met with Roy. Roy read the document and indicated he had no questions. Brescher asked Roy if he was signing the form voluntarily as his free act and deed. Roy reported that he was and then executed the document with Brescher notarizing it. Brescher now avers that she "ha[s] no doubt that Roy understood what he was doing on March 22, 2016 when he signed the TOD [Agreement], what the document was designed and intended to accomplish, and to whom he was planning to leave specified portions of his stock." (Aff. of Jessie McCann Brescher, Esq. ¶ 10 (dkt. no. 78-1).)

Furthermore, multiple individuals who were in contact with Roy around the time he signed the TOD Agreement have attested to his mental soundness, and there is no medical evidence in the summary judgment record to the contrary. Brescher avers that every time she saw Roy in 2016, including the date he signed the TOD, he "was lucid and mentally alert." (Id.) Similarly, Glidden asserts that every time he met with Roy in 2016, Roy was "upbeat, lucid, mentally alert, and able to focus his attention" on the topic at hand, and that he "was mentally alert and focused" in the months following the execution of the TOD. (Aff. of Richard J. Glidden, Esq. ¶¶ 4, 9.) His brother attests that but for a brief hospitalization in 2015, "in all the times [they] talked, [Flanders] never doubted he was in full control of his mental faculties." (Aff. of David Flanders ¶ 7 (dkt. no. 78-3).) His close friend and personal assistant Sherry noted that after he was hospitalized in 2015, he

"seemed in full control of his mental faculties," and to his knowledge only took medications prescribed by his doctor. (Aff. of William Sherry in Supp. of Cross-cl. Plfs.' Opp'n to Kate Borden's Mot. to Dismiss ¶ 7 (dkt. no. 78-4).) Additionally, Peterson "always found him completely lucid and rather brilliant." (Aff. of Brett Peterson ¶ 2 (dkt. no. 78-6).)

Because Borden has failed to show a triable issue as to whether Roy lacked capacity at the time he executed the TOD Agreement, the crossclaim plaintiffs' Second Motion for Summary Judgment (dkt. no. 76) is GRANTED. Merrill Lynch shall distribute the account ending in #3523 in accordance with the beneficiary designations identified in the TOD Agreement. Within seven (7) days of this Opinion and Order, the crossclaim plaintiffs shall consult with Merrill Lynch and file a proposed form of judgment.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
Senior United States District Judge